**Areya E. Holder**
**State Bar No. 24002303**
**LAW OFFICE OF AREYA HOLDER, P.C.**
**800 West Airport Freeway, Suite 540**
**Irving, Texas 75062**
**(972) 438-8800 – Telephone**
**(972) 438-8825 – Telecopier**
**Email: areya@holderlawpc.com**

Counsel for LOPC Landscape, Inc. *dba* Texas Premier Landscape
Debtor and Debtor-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| LOPC LANDSCAPE, INC. *dba* | § | CASE NO. 08-36521-SGJ |
| TEXAS PREMIER LANDSCAPE | § | |
| | § | |
| Debtor | § | Chapter 11 |
| | § | |

## DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT

TO:  Creditors and Equity Security Holders of LOPC Landscape, Inc. ("Debtor"):

    Contained in this packet of documents which has been sent to you by the Debtor is the Debtor's Disclosure Statement (the "Disclosure Statement"), the Debtor's Plan of Reorganization (the "Plan"), the Ballot for Voting on the Plan of Reorganization, and the Order Approving Disclosure Statement and Fixing Time for Filing Acceptance or Rejection of Plan, Combined with Notice Thereof.  Please read all of these materials carefully.  Please note that in order for your vote to be counted, you must complete, date, sign, and return the enclosed Ballot to the attorney for the Debtor by the date specified on the ballot.  The ballot must also include your name and address.

**DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT** - Page 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| LOPC LANDSCAPE, INC. *dba* | § | CASE NO. 08-36521-SGJ |
| TEXAS PREMIER LANDSCAPE | § | |
| | § | |
| Debtor | § | Chapter 11 |
| | § | |

## **DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT**

## **ARTICLE I**

## **INTRODUCTORY STATEMENT**

Debtor filed with the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, its First Amended Plan of Reorganization (the "Plan") in the above-captioned case on August 5, 2009. Pursuant to the terms of the United States Bankruptcy Code, this Disclosure Statement has been presented to and approved by the Bankruptcy Court. Such approval is required by statute and does not constitute a judgment by the Court as to the desirability of the Plan or as to the value or suitability of any consideration offered thereby. Interested parties are referred to 11 U.S.C. section 1125, which reads, in part:

> "(b) An acceptance or rejection of a plan may not be solicited after the commencement of the case under this Title from a holder of a claim or interest with respect to such claim or interest unless, at the time or before such solicitation, there was transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the Court as containing adequate information. The Court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.
> . . . .
> (d) Whether a disclosure statement contains adequate information is not governed by any otherwise applicable non-bankruptcy law, rule or regulation, but an agency or official whose duty is to administer or enforce such a law, rule or regulation may be heard on the issue of whether a disclosure statement contains adequate information. Such an agency or official may not appeal from an order approving a disclosure statement.
>
> (e) A person that solicits, in good faith and in compliance with, the applicable provisions of this Title, or that participates, in good faith and in compliance with the applicable provisions of this Title, in the offer, issuance, sale,

or purchase of a security, offered or sold under the plan of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the offer, issuance, sale, or purchase of securities."

The Debtor has prepared this Disclosure Statement to disclose that information which, in its opinion, is material, important and necessary to an evaluation of the Plan. The material herein contained is intended solely for that purpose, and solely for the use of known creditors and interest holders of the Debtor and, accordingly, may not be relied upon for any purpose other than determination of how to vote on the Plan. In addition, materials contained in this Disclosure Statement are not necessarily sufficient for the formation of a judgment by any creditor of the preferability of any alternative to the Plan. This Disclosure Statement has not necessarily been reviewed nor has it been approved by the Securities and Exchange Commission or any other agency of the state or federal government.

**THE APPROVAL BY THE BANKRUPTCY COURT OF THE DISCLOSURE STATEMENT DOES NOT GUARANTEE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**ONLY THOSE REPRESENTATIONS SET FORTH IN THIS DISCLOSURE STATEMENT ARE AUTHORIZED BY THE DEBTOR. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION.**

**THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE OF THIS DISCLOSURE STATEMENT UNLESS ANOTHER DATE IS SPECIFIED. THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE HEREOF. THE DEBTOR IS UNABLE TO GUARANTEE THAT THE INFORMATION CONTAINED IN THE PLAN AND THIS DISCLOSURE STATEMENT IS ENTIRELY WITHOUT ERROR, BUT ALL REASONABLE EFFORTS HAVE BEEN MADE TO ENSURE THAT ALL REPRESENTATIONS ARE AS ACCURATE AS POSSIBLE.**

**THE SOURCE OF INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS THE DEBTOR OR ITS AGENTS AND EMPLOYEES AND HAS NOT BEEN SUBJECT TO AN AUDIT UNLESS OTHERWISE SPECIFICALLY NOTED. THE STATEMENTS MADE HEREIN LIKEWISE HAVE NOT BEEN VERIFIED BY THE DEBTOR'S COUNSEL, ALTHOUGH AN ATTEMPT HAS BEEN MADE TO BE CONSERVATIVE AND REALISTIC. NEITHER THE DEBTOR NOR ITS COUNSEL REPRESENT OR WARRANT THE ACCURACY OF DISCUSSIONS CONTAINED HEREIN REGARDING EVENTS.**

**AS STATED PREVIOUSLY, YOU ARE URGED TO REVIEW THE PLAN AND THIS DISCLOSURE STATEMENT IN THEIR ENTIRETY PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN TO ENSURE A COMPLETE UNDERSTANDING OF THE TRANSACTIONS CONTEMPLATED UNDER THE PLAN AND HOW THOSE TRANSACTIONS WILL AFFECT YOUR CLAIM AGAINST, OR INTEREST IN THE DEBTOR.**

The Debtor has proposed the Plan hereinafter described and favors it, and materials referring to alternatives to the Plan are limited by both practical considerations of space and the opinions of the Debtor regarding same.

A creditor or interest holder, in order to vote on the Plan, must have filed a proof of claim or interest on or before the Bar Date, unless scheduled by the Debtor as not disputed, liquidated or contingent. Any creditor scheduled as not disputed, liquidated and not contingent is, to the extent scheduled, deemed to have filed a claim and, absent objection, such claim is deemed allowed. A creditor or interest holder may vote to accept or reject the Plan by filling out and mailing to the Bankruptcy Court the ballot which has been provided in this package of information.

The Court has fixed _____ at 5:00 p.m., as the last date by which ballots must be served on the attorney for the Debtor. No vote received by the Court and the attorney for the Debtor after such time will be counted. Whether a creditor or interest holder votes on the Plan or not, such person will be bound by the terms and treatment set forth in the Plan if the Plan is accepted by the requisite majority of classes of creditors and interest holders and/or is confirmed by the Court. Absent some affirmative act constituting a vote, such creditor or interest holder will not be included in the tally. Allowance of a claim or interest for voting purposes does not necessarily mean that all or a portion of the claim or interest will be allowed or disallowed for distribution purposes.

In order for the Plan to be accepted by a class of creditors, more than one half in number and at least two-thirds in amount of such class of claims must vote to accept the Plan. Only those claim holders that actually vote are considered in the calculations. In order for the Plan to be accepted by interest holders, at least two-thirds in amount of interests must vote to accept the plan. Again, only voting interest holders are considered in the calculation. You are, therefore, urged to fill in, date, sign and promptly mail the enclosed ballot which has been furnished you. Please be sure to complete properly the form and identify legibly the name of the claimant or interest holder.

The Debtor, creditors or others may solicit your vote. The cost of any solicitation by the Debtor will be borne by the Debtor. No representative of the Debtor shall receive any additional compensation for any solicitation.

No representations concerning the Debtor or the Plan are authorized by the Debtor other than as set forth in this Disclosure Statement. Any representation or inducements made by any person to secure your vote which are other than herein contained should not be relied upon, and

such representations or inducements should be reported to counsel for the Debtor, who shall deliver such information to the Bankruptcy Court.

Certain of the materials contained in this Disclosure Statement are taken directly from other, readily accessible instruments or are digests of other instruments. While the Debtor has made every effort to retain the meaning of such other instruments or the portions transposed, the Debtor urges that any reliance on the contents of such other instrument should depend on a thorough review of the instruments themselves.

Terms used in this Disclosure Statement are defined in Article I of the Plan, and those terms should be read together with those definitions.

## ARTICLE II

## NATURE AND HISTORY OF THE EVENTS LEADING UP TO BANKRUPTCY

In approximately 2006, the value of homes in the national real estate market declined significantly which in turn caused a significant decline in the purchase and sale of both new and existing homes in the Dallas area. This decline in the construction and purchase and sale of residential real estate created a trickle down effect to many contractors including landscape companies. In addition, the subsequent economic recession created a fear in many consumers which caused some people to reduce their household expenses including landscape services.

To further exacerbate matters, Debtor's in-house bookkeeper made significant errors with respect to the payment of employee withholding taxes and the filing of quarterly tax returns. Many of these taxation errors were only discovered shortly before the filing of the voluntary bankruptcy petition.

## ARTICLE II(A)

## NATURE AND STATUS OF DEBTOR'S BUSINESS

Debtor operates a landscape business that services, designs and maintains primarily residential property. Debtor has operated in the greater Dallas area for the last seventeen years and enjoys a good reputation in the community. Debtor's principal, Larry Haynes, is a respected landscape designer, and Debtor services many of the finer homes in the metroplex. Debtor is currently operating from its office and warehouse located at 3250 Oradell Lane in Dallas, Texas.

Since the bankruptcy filing, Debtor has downsized and restructured its workforce in order to operate in a more cost effective manner. Additionally, Debtor has engaged an experienced accounting firm to assist Debtor with its quarterly tax returns, computation of 941 tax liability as well as service Debtor's general accounting needs. Debtor has launched an aggressive marketing campaign to new and prior residential communities and is committed to the viability of its landscape business.

## ARTICLE III

**DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT** - Page 5

## THE PLAN OF REORGANIZATION

The Plan has been provided to all creditors or possible creditors and all interest holders of the Debtor known to the Debtor. The Plan should be read carefully and independently of this Disclosure Statement.

## ARTICLE IV

## DIVISION OF CREDITORS AND INTEREST HOLDERS INTO CLASSES

The Plan classifies and treats various classes of creditors of the Debtor's estate. The following is a summary of classification and treatment of creditors' claims under the Plan:

For the purpose of satisfaction of all Claims against and Interests in the Debtor, the Claims and Equity Interests are divided into the following classes:

A.   Priority Claims:

Class 1: All Allowed Administrative Claims.

Class 2: All Allowed Priority Tax Claims.

B.   Secured Claims:

Class 3: All Allowed Secured Claims of the Texas Workforce Commission. (Impaired).

Class 4: All Allowed Secured Claims of JP Morgan Chase Bank, NA/Bank One (Impaired).

Class 5: All Allowed Secured Claims of Dallas County. (Impaired).

Class 6: All Allowed Secured Claims of Ford Motor Credit Company, LLC (Impaired).

Class 7: All Allowed Secured Claims of the Internal Revenue Service (Impaired).

Class 8: All Allowed Secured Claims of Texas Capital Bank, NA (Impaired).

Class 9: All Allowed Secured Claims of Scott Miller and Roslyn Miller (Impaired).

Class 10: All Allowed Secured Claims of the Comptroller of Public Accounts (Impaired).

C.   Unsecured Claims:

Class 11: All Allowed Unsecured Claims

D.  Equity Interest:

Class 12: Equity Interest (Impaired).

## ARTICLE V

## TREATMENT OF CLAIMS AND INTERESTS.

A.  TREATMENT OF CLAIMS AND INTERESTS

Administrative Claims: (Class 1) - Administrative Claims shall be paid, to the extent allowed by the Court, in full in cash on or before the later of (a) ten (10) days following the Effective Date or (b) ten (10) days following the date on which the Administrative Claims are Allowed by a Final Order of the Court. For purposes of payment of administrative expenses, any administrative claimant desiring to be paid under the Plan must file an application for allowance of Administrative Claim on or before thirty (30) days after the entry of an Order confirming the Plan.

Professional Fee Claims. Each Professional employed pursuant to Section 330 of the Code shall file their final Fee Application with the Court within sixty (60) days after the Effective Date, unless the Court orders otherwise. Service of a final Fee Application or notice related to a final Fee Application shall be promptly made to the Reorganized Debtor and parties requesting notice in this case. Objections to any Professional Fee Claims by any party in interest shall be filed and served not later than twenty (20) days after filing and service of a Final Fee Application or service of a notice related to a Final Fee Application.

Priority Tax Claims: (Class 2) - Priority Tax Claims shall be paid, up to the Allowed amount of such Claim, on or before the later of (a) thirty (30) days after the Effective Date or (b) thirty (30) days after the date on which the priority tax claims are allowed by a Final Order of the Court, except to the extent that the Holder of an Allowed Priority Tax Claim agrees to a different treatment. Provided however, at the option of the Reorganized Debtor, the Reorganized Debtor may pay Allowed Priority Tax Claims the present value of the allowed claim as of the Effective Date in regular monthly payments in cash over a period not exceeding five (5) years after the petition date, as provided in section 1129 (a)(9)(C) of the Bankruptcy Code, with the first payment due and thirty (30) days after the Effective Date of the confirmed plan. To receive present value as of the Effective Date, such allowed claims will be paid interest at 4.25% from the Effective Date until paid in full.

B.  TREATMENT OF CREDITORS

All Allowed Secured Claims of the Texas Workforce Commission: (Class 3) - The Class 3 Claim shall be treated as a secured claim up to the allowed amount of such claim. The Class 3 Claim shall bear interest at the rate of four and one-quarter per annum (4.25%) from the Effective Date until paid in full. Upon confirmation, Debtor shall begin making payments on the Class 3 Claim in the amount of $115.00 per month with the first payment due and payable

thirty (30) days after the effective date of the confirmed plan. Payments of $115.00 per month on the Class 3 Claim will continue to be made monthly until the claim is paid in full with interest. The Class 3 Claim is impaired.

All Allowed Secured Claims of JP Morgan Chase Bank, NA/Bank One: (Class 4) - The Class 4 Claim shall be treated as a secured claim in the amount of $21,488.04. The Class 4 Claim shall bear interest at the rate of five percent per annum (5%). The maturity date on the note evidencing the Class 4 Claim shall be modified to forty-three (43) months from the effective date of the confirmed plan at which time all principal and interest on the allowed, secured claim shall be paid in full. Upon confirmation, Debtor shall begin making payments on the Class 4 Claim in the amount of $550.00 per month with the first payment due and payable thirty (30) days after the effective date of the confirmed plan. Payments of $550.00 per month on the Class 4 Claim will continue to be made monthly until the claim is paid in full over a maximum payment term of forty-three (43) months with credit given for all adequate protection payments made post-petition. The Class 4 Claimant shall retain its lien against the 2006 Mercedes MI350. However, upon the completion of payments on the allowed, secured claim of $21,488.04 as set forth above, JP Morgan Chase Bank, NA/Bank One shall release its lien and title to the 2006 Mercedes MI350 directly to the Debtor. The Class 4 Claim is impaired.

All Allowed Secured Claims of Dallas County: (Class 5) - The Class 5 Claim shall be treated as a secured claim up to the allowed amount of such claim. The Class 5 Claimant shall receive interest on its claims from the Petition Date through the Effective Date of the Plan at the state statutory rate of 1% per month pursuant to 11 U.S.C. Sections 506(b) and 511. The Class 5 Claimant will also receive post-Effective Date interest on their claims at the state statutory rate of 12% per annum pursuant to 11 U.S.C. Sections 511 and 129. Upon confirmation, the Class 5 claims will be paid in monthly installments of $193.00 per month over thirty-six (36) months commencing 30 days after the effective date of the confirmed plan. The Class 5 Claimant shall retain its liens. The Reorganized Debtors will pay the Class 5 Claimant's administrative expense claims for year 2009 ad valorem real property taxes prior to delinquency pursuant to state law. The Class 5 Claim is impaired.

All Allowed Secured Claims of Ford Motor Credit Company, LLC: (Class 6) - The Class 6 Claims shall be treated as a secured claim up to the allowed amount of each such claim. The Class 6 Claim related to the 2007 Ford Explorer shall be treated as a secured claim in the amount of $12,625.00. The Class 6 Claim related to the 2006 Ford F150 shall be treated as a secured claim in the amount of $8,450.00. The Class 6 Claims shall bear interest at the rate of five percent per annum (5%). The maturity date on the notes evidencing the Class 6 Claims shall be modified to forty-eight (48) months from the effective date of the confirmed plan at which time all principal and interest on the allowed, secured claims shall be paid in full. Upon confirmation, Debtor shall begin making payments on the Class 6 Claims in the amount of $291.00 per month on the 2007 Ford Explorer and $195.00 per month on the 2006 Ford F150 with the first payments due and payable thirty (30) days after the effective date of the confirmed plan. Payments of $291.00 and $195.00 per month on the Class 6 Claims will continue to be made monthly until the allowed, secured Class 6 Claims are paid in full over a maximum payment term of forty-eight (48) months with credit given for all adequate protection payments made post-petition. The Class 6 Claimant shall retain its liens against the 2006 Ford F150 and

the 2007 Ford Explorer. However, upon the completion of payments on the allowed, secured claims of $12,575.00 and $6,175.00 as set forth above, Ford Motor Credit Company, LLC shall release its liens and titles to the 2006 Ford F150 and the 2007 Ford Explorer directly to the Debtor. Any unsecured deficiency claim asserted by Ford Motor Credit Company, LLC shall be treated and paid in accordance with allowed, unsecured creditors and will not affect the release of titles. The Class 6 Claims are impaired.

All Allowed Secured Claims of the Internal Revenue Service: (Class 7) - The Class 7 Claim shall be treated as a secured claim up to the allowed amount of such claim. Upon confirmation, Debtor shall begin making payments on the Class 7 Claim in the amount of $1,604.00 per month with the first payment due and payable thirty (30) days after the effective date of the confirmed plan. Payments of $1,604.00.00 per month on the Class 7 Claim will continue to be made monthly until the claim is paid in full over a maximum payment term of sixty (60) months. The Class 7 Claim is impaired.

All Allowed Secured Claims of Texas Capital Bank: (Class 8) - The Class 8 Claim shall be treated as a secured claim up to the allowed amount of such claim. The Class 8 Claim shall bear interest at the rate of five percent per annum (5%). The maturity date on the note evidencing the Class 8 Claim shall be modified to two hundred and forty (240) months from the effective date of the confirmed plan at which time all principal and interest on the allowed, secured claim shall be paid in full. Upon confirmation, Debtor shall begin making payments on the Class 8 Claim in the amount of $1,485.00 per month with the first payment due and payable thirty (30) days after the effective date of the confirmed plan. Payments of $1,485.00 per month on the Class 8 Claim will continue to be made monthly until the claim is paid in full over a maximum payment term of two hundred and forty (240) months. The Class 8 Claimant shall retain its lien against the property located at 3250 Oradell Lane until the claim is paid in full as set forth above. The Class 8 Claim is impaired.

All Allowed Secured Claims of Scott Miller and Roslyn Miller: (Class 9) - The Class 9 Claim shall be treated as a secured claim up to the allowed amount of such claim. The Class 9 Claim shall bear interest at the rate of five percent per annum (5%). The maturity date on the note evidencing the Class 9 Claim shall be modified to two hundred and forty (240) months from the effective date of the confirmed plan at which time all principal and interest on the allowed, secured claim shall be paid in full. Upon confirmation, Debtor shall begin making payments on the Class 9 Claim in the amount of $1,155.00 per month with the first payment due and payable thirty (30) days after the effective date of the confirmed plan. Payments of $1,155.00 per month on the Class 9 Claim will continue to be made monthly until the claim is paid in full over a maximum payment term of two hundred and forty (240) months. The Class 9 Claimant shall retain its lien against the property located at 3250 Oradell Lane until the claim is paid in full as set forth above. The Class 9 Claim is impaired.

All Allowed Secured Claims of the Comptroller of Public Accounts: (Class 10) - The Class 10 Claims shall be treated as a secured claim up to the allowed amount of each such claim. The Class 10 Claims shall bear interest at the rate of four and one-quarter per annum (4.25%) from the Effective Date until paid in full. Upon confirmation, Debtor shall begin making payments on the Class 10 Claims in the amount of $650.00 per month with the first

payment due and payable thirty (30) days after the effective date of the confirmed plan. Payments of $650.00 per month on the Class 10 Claims will continue to be made monthly until the claims are paid in full with interest over a maximum payment term of sixty (60) months from the petition date. The Class 10 Claims are impaired.

All Allowed Unsecured Claims: (Class 11) – A Class 11 Claimant holding an Allowed Unsecured Claim shall be paid a pro rata share of $24,000.00 over forty-eight (48) months from the effective date of the confirmed plan. Debtor shall begin making payments in quarterly installments on the Class 11 Claims thirty (30) days after the effective date of the confirmed plan. To the extent a claim is not allowed until a date after the commencement of the 48 month payment period, payments on such allowed claim will commence and be due and payable on the first day of the month following the date of the order allowing such claim, and the first day of each month remaining in the 48 month payment period in an amount sufficient to pay the allowed unsecured claim its pro rata share. The first payment to Class 11 Claimants will be $1/16^{th}$ of the claimant's pro rata share on the Allowed Unsecured Claim. The $1/16^{th}$ payment will be computed by dividing the allowed pro rata share of the claim by 48 months and adding three payments together which in turn will equal a quarterly payment. Payments in an equal amount to the initial payment will continue to be made quarterly until the claim is paid its pro rata share over a maximum payment term of 48 months.

At the time of the filing of Debtor's Plan and Disclosure Statement, unsecured creditors had filed approximately $105,207.01 in unsecured claims. However, Debtor's schedules reflect $262,456.13 in unsecured claims. Based on Debtor's schedules, Debtor estimates the monthly dividend to unsecured creditors will be 11% of the allowed secured claims. The Class 11 claims are impaired.

Equity Interest Holders: (Class 12) – The pre-petition interests in this Debtor shall be cancelled. The Debtor shall issue a new equivalent unit of ownership in this Debtor to Larry Haynes. In exchange for the issuance of the new equivalent unit of ownership, Larry Haynes will contribute $2,500.00 in new value to the Debtor. The Class 12 claim is unimpaired.

Payments to the United States Trustee: The Reorganized Debtor shall pay all quarterly fees of the United States Trustee until the Case is closed.

C. FUNDING OF THE PLAN, AND SOURCES AND USES OF PLAN FUNDS.

Debtor shall execute and deliver such documents, agreements and instruments reasonably necessary to carry forward the intents and purposes of this Plan. The funding of the indebtedness contained in the Plan will be from the cash flow generated by the operations of the Debtor's landscape business.

D. RETENTION OF JURISDICTION

The Plan includes provisions regarding the retention of jurisdiction by the Bankruptcy Court over a variety of matters as may be pending as of Confirmation or as may arise subsequent thereto.

**DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT** - Page 10

E. FINANCIAL INFORMATION OF REORGANIZED DEBTOR

Debtor's Financial Projections are attached hereto as Exhibit "A", and incorporated by reference herein. Debtor's most recent operating report is attached hereto as Exhibit "B". Debtor's Financial Projections have been generated using Debtor's expertise gained from operating the business.

F. LIQUIDATION ANALYSIS.

In the event of a liquidation of the Debtor's assets in a Chapter 7 bankruptcy case, the business assets would likely be foreclosed by Debtor's secured creditor(s) following a lifting of the automatic stay. In the event of a foreclosure, Debtor believes that there is a substantial risk that unsecured creditors would receive nothing as compared to the approximate 11% dividend that Debtor is proposing to pay. In the event of a conversion of this case to Chapter 7 without a foreclosure, the Chapter 7 trustee would liquidate the assets of the Debtor either through a "going concern" type sale or the sell off of the Debtor's assets.

Debtor believes that in the event of an orderly liquidation of the Debtor's assets by a Chapter 7 trustee, the following analysis would dictate the results to creditors:

ASSETS

| | |
|---|---|
| 3250 Oradell Lane | $400,000.00 |
| Accounts receivable | $82,625.00 |
| Possible cause of action against Marvin and Norman Myers | $0.00[1] |
| Checking account | $0.00 |
| Automobiles, trucks and trailers | $69,025.00 |
| Office equipment, furnishings and supplies | $5,650.00 |
| Machinery, fixtures, equipment and supplies | $500.00 |
| **Total Assets** | **$557,800.00** |

EXPENSES OF LIQUIDATION

Administrative Expenses

    Chapter 11
    Chapter 11 Debtor's Counsel    $10,000.00

    Chapter 7
    Trustee's Fee    $9,000.00
    Attorney's Fees and Auctioneers    $8,500.00

---

[1] Debtor has been unable to determine a value for this claim, but wishes to preserve the right to pursue the cause of action. In the event Debtor recovers any funds pursuant to this cause of action, Debtor will modify its plan to pay those funds to and for the benefit of unsecured creditors.

**DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT** - Page 11

|  |  |
|---|---|
| Post-Petition Vendors and other Administrative Payables | $2,000.00 |
| Unpaid Post –Petition Salaries | $2,500.00 |
| **Total Administrative Expenses** | **$32,000.00** |
| Priority Expenses | |
| Internal Revenue Service | $26,237.65 |
| **Total Priority Expenses** | **$26,237.65** |
| Secured Debt | |
| Texas Workforce Commission | $1,361.42 |
| JP Morgan Chase Bank, NA/Bank One | $14,050.00 |
| Dallas County | $6,932.42 |
| Ford Motor Credit | $27,978.39 |
| Internal Revenue Service | $96,223.63 |
| Texas Capital Bank | $224,841.12 |
| Scott Miller and Roslyn Miller | $175,000.00 |
| Comptroller of Public Accounts | $38,367.38 |
| **Total Secured Debt** | **$584,754.36** |
| **TOTAL EXPENSES OF LIQUIDATION** | **$642,992.01** |

**ESTIMATED PAYMENT TO UNSECURED CREDITORS     0%**
    ($557,800.00 less $642,992.01 = a zero percent distribution to unsecured creditors)

Based on the above assets and liabilities, unsecured creditors would receive nothing in a Chapter 7 liquidation as compared to the approximate 11% dividend unsecured creditors would receive under Debtor's proposed plan of reorganization.

  G.  POST-PETITION TAXES.

  As of the date of the hearing on the Disclosure Statement, Debtor was delinquent approximately $12,000.00 in unpaid, post-petition taxes. Prior to confirmation and as a condition of confirmation, Debtor will be completely current on post-petition taxes.

<h1 style="text-align:center">ARTICLE VI</h1>

# CONSIDERATIONS IN
# VOTING ON THE CHAPTER 11 PLAN

### A. OPERATION OF CHAPTER 11

In a Chapter 11 case, unless a trustee has been appointed, the Debtor is the only possible proponent of a plan of reorganization during the initial 120 days of the proceedings after an order for relief has been entered.

Chapter 11 of the Bankruptcy Code permits the adjustment of secured debts, unsecured debts and equity interests. A Chapter 11 plan may provide less than full satisfaction of senior indebtedness or junior indebtedness or may provide for a return to equity owners absent full satisfaction of indebtedness so long as no impaired class votes against the plan.

In the event a class is unimpaired, it is automatically deemed to accept the plan. A class is unimpaired, in essence, if: (1) its rights at confirmation are the same as what existed (or would have existed absent defaults) before the date of the filing of the petition commencing the Chapter 11 case and any existing defaults are cured or provided for and the class is reimbursed actual damages; or (2) the allowed claims of the class are paid in full in cash as though matured.

If an impaired class votes against the Plan, this does not necessarily make implementation of the Plan impossible so long as the Plan is fair and equitable and that class is afforded certain treatment defined by the Bankruptcy Code and at least one other impaired class votes for the Plan. The required treatment may be very broadly defined as providing to a creditor the face value of its claim. If the treatment afforded the dissenting class of creditors is equal to or greater than the face value of the claims of such class, the Plan may be confirmed over the dissent of that class. The Plan may also be confirmed over dissent if classes junior to the dissenting class receive no consideration under the Plan.

If there is no dissenting class, the basic tests for approval by a Court of a Chapter 11 plan (i.e., confirmation) are whether the Plan is in the best interests of creditors and interest holders and is feasible. A court will find a Plan to be in the best interests of creditors and interest holders if the plan will provide a recovery to the creditors and interest holders at least equal to that which they would obtain if the Debtor were liquidated and the proceeds of liquidation were distributed in accordance with bankruptcy liquidation (Chapter 7) priorities. In other words, if the plan provides each class of creditors and interest holders with money or other property of a value equaling or exceeding the probable dividend in liquidation bankruptcy, then the Plan is in the best interests of creditors and interest holders. The Court, in considering whether the Plan is in the best interest of creditors and interest holders, is not required to consider any alternative to the Plan other than liquidation bankruptcy.

In considering feasibility (i.e., that confirmation is not likely to be followed by liquidation or further reorganization), the Court is only required to determine whether the Plan can be performed by the Debtor.

This entails determining:

**DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT** - Page 13

    (1)  The availability of cash for payments required at confirmation;

    (2)  The ability of the Debtor to generate future cash flow sufficient to make payments called for under the Plan and to continue in business; and

    (3)  The absence of any other factor which would make it impossible for the Debtor to accomplish that which it promises to accomplish in the Plan or continue its existence as contemplated in the Plan.

In addition, in order to confirm a Plan, the Court must find among other things that the Plan was proposed in good faith and that the Plan and its proponents are in compliance with the applicable provisions of the Bankruptcy Code.

These determinations by the Court occur at the hearing on a confirmation after a Plan has been accepted by vote of the creditors and interest holders. The Court's judgment on these matters does not constitute an expression of the Court's opinion as to whether the Plan is a good one or an opinion by the Court regarding any debt instrument or equity interest or securities issued to or for the benefit of the creditors under the Plan.

  B.  <u>ALTERNATIVES TO THE PLAN</u>

Although the Disclosure Statement is intended to provide information to assist in the formation of a judgment as to whether to vote for or against the Plan and although creditors are not being offered through that vote an opportunity to express an opinion concerning alternatives to the Plan, a brief discussion of alternatives to the Plan may be useful. The Debtor believes the proposed Plan to be in the best interests of creditors and the Debtor, and does not favor any alternative to the proposed Plan. In arriving at that conclusion, Debtor assesses the alternatives as follows:

  1)  <u>Chapter 7 Liquidation Analysis</u>. Debtor could convert the Case to Chapter 7 and allow a bankruptcy trustee to be appointed to liquidate and distribute assets. In the event that the Court does not confirm a plan of reorganization in this case, conversion to Chapter 7 will ultimately result. Debtor believes this alternative to be unsatisfactory because Unsecured Creditors would receive nothing in a Chapter 7 bankruptcy proceeding (as cited in the Liquidation Analysis referenced above) as opposed to the approximate 11% dividend under Debtor's proposed plan of reorganization.

  2)  <u>Dismissal of the Case</u>. Dismissal of the Chapter 11 case would most likely lead to the same unsatisfactory result as a Chapter 7 liquidation.

The Debtor has attempted to set forth alternatives to the proposed Plan. However, the Debtor must caution creditors that a vote must be for or against the Plan. The vote on the Plan does not include a vote on alternatives to the Plan. There is no assurance what turn the proceedings will take if the Plan fails to be accepted. If you believe one of the alternatives referred to is preferable to the Plan and you wish to urge it upon the Court, you should consult counsel.

C.  SPECIFIC CONSIDERATIONS IN VOTING

All of the foregoing give rise in the instant case to the following implications and risks concerning the Plan.

While the Plan provides for certain payments at confirmation, such payments will only apply to Allowed Claims including Claims arising from defaults. Under the Bankruptcy Code, a Claim may not be paid until it is allowed. A Claim will be allowed in the absence of objection.

A Claim, including a Claim arising from default, which has been objected to will be heard by the Court at a regular, evidentiary hearing and allowed in full or in part or disallowed. While the Debtor bears the principal responsibility for Claim objections, any interested party, including creditors, may file claim objections. Accordingly, payment on some Claims, including Claims arising from defaults, may be delayed until objections to such Claims are ultimately settled.

D.  DISCLOSURES REQUIRED BY THE BANKRUPTCY CODE

The Bankruptcy Code requires disclosure of certain facts:

(1) There are no payments made or promises of the kind specified in section 1129(a)(4) of the Bankruptcy Code which have not been disclosed to the Court

(2) Counsel to the Debtor has advised the Debtor that the Debtor may require legal services in connection with this case after confirmation which may require reimbursement. Debtor may continue to use the Law Office of Areya Holder, P.C. as counsel after confirmation.

## ARTICLE VII

## ANALYSIS OF CLAIMS, DESCRIPTION OF LITIGATION, AND EXECUTORY CONTRACTS

A.  CLAIMS

Under the Bankruptcy Code, a creditor may be able to participate in an estate whether or not he has filed a proof of claim. Accordingly, the schedules filed by Debtor will largely determine the claims against the funds to be provided under the Plan. The Schedules of the Debtor, on file with the Court, show the amount of prepetition debt that the Debtor believes to exist.

B.  LITIGATION

Cause No. JC08-00792P, Law Office of J. Michael Alexander, P.C. vs. Texas Premier Landscape, Inc. fka Lawns of the Park Cities, aka LOPC Landscape, Inc. This was a suit primarily alleging breach of contract for unpaid legal fees that was pending in the Justice Court Precinct 5, Place 2, Dallas County, Texas at the time of the bankruptcy filing. Debtor is proposing to treat and pay the unsecured claim of the Law Office of J. Michael Alexander in accordance with other general unsecured claims under this Plan.

**DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT** - Page 15

C.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor anticipates the following leases/executory contracts will be assumed or rejected at confirmation and paid in the ordinary course of business:

None.

## ARTICLE VIII

### FEASIBILITY, RISK ANALYSIS AND FINANCIAL PROJECTIONS

Under the test for feasibility under the Bankruptcy Code, the Court must look to the Debtor's projected income, expenses, assets and liabilities to determine whether the Plan will leave the estate financially stable. A finding of financial stability is not a guarantee, but a reasonable expectation of success. The Plan must provide the reorganized Debtor with the ability to service any debt included in the Plan and with enough capital for continuation of the business.

## ARTICLE IX

### MATERIAL FEDERAL TAX CONSEQUENCES

Debtor believes that the Plan and Disclosure Statement do not contain any material federal tax consequences to the Debtor, any successor to the Debtor, and/or a hypothetical investor typical of the holders of claims or interests in the case. However, all creditors and parties in interest should consult their own tax advisors regarding the potential tax consequences of this Plan and Disclosure Statement.

## ARTICLE X

### CONCLUSION

The materials provided in this Disclosure Statement are intended to assist you in voting on the Plan in an informed fashion. Since, if the Plan is confirmed, you will be bound by its terms, you are urged to review this material and make such further inquiries as you may deem appropriate and then place an informed vote on the Plan.

Dated: August 5, 2009.

By: LOPC Landscape, Inc.

*/s/Larry Haynes*
Larry Haynes, President

**DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT** - Page 16

OF COUNSEL:

By: */s/Areya Holder*
   Areya E. Holder
   SBN: 24002303

Law Office of Areya Holder, P.C.
800 W Airport Freeway, Suite 540
Irving, TX 75062
972-438-8800– Telephone
972-438-8825– Telecopier
areya@holderlawpc.com